CATON, Justice, delivered the opinion of the court: (1) This bill was filed by Henderson, for the purpose of rectifying a mistake in, and foreclosing a mortgage. It appears that Willis gave to Henderson a mortgage dated the first of June, 1836, to secure the payment of $300 and interest. The land described in the mortgage is situated in township seven (7), in range four (4) east, in Fulton county. I think it is satisfactorily established by the testimony of J. J. Culton, Kelso, Caykendall, J. McPheters, A. R. McPheters, Rockhold, and C. R. Culton, so far as it is possible to establish that fact, from the declaration of all the parties, that a mistake was made in the description of the land, in drawing up the mortgage, and that the land really intended to be encumbered was situate in township six (6), instead of township seven (7). It has been fully settled, at the present term of this court., in the case of Ballance v. Underhill et al. 8 Scam. 450, that it is competent for a court of chancery to correct mistakes in instruments of writing of all kinds, and upon a proper case, in the same suit, to grant relief upon the instrument, when so corrected, in the same manner as if it had been made perfect in the first instance. I shall, therefore, hereafter consider the mistake as corrected, and treat the mortgage the same as .if it described the land mortgaged as situate in- township six (6), according to the real intention of the parties at the time the mortgage ivas executed. The next enquiry is whether Offield and'Turner, at the time they purchased the land of Willis, had notice of Henderson’s mortgage on the premises. It appears that the land was purchased by Turner, in the fall of 1836, for himself and Offield, and paid for with goods out of their partnership store. Offield has filed no answer, and Turner’s answer is not sworn to, so that the question of notice must be determined by the depositions alone;, and I am satisfied, beyond a doubt, that the testimony sufficiently establishes that Turner and Offield both knew of the existence of this mortgage, at the time they made the purchase, and that they purchased with the expectation and belief, that they took it subject to this mortgage; no person having at the time discovered the mistake, but all parties then believing that the land was truly described in the mortgage. It is true that Offield states in his deposition, that at time the purchase was made, he did not know of the existence of the mortgage on this land; but he is distinctly contradicted by several [*19] witnesses. É. O. Guitón testifies" that in November, 1836, Offield told him that he and Turner both knew that Henderson had a mortgage on the land at the time they purchased it of Willis. Rockhold swears that in 1837 Offield told him that Henderson had a mortgage on the land, but‘in 1838 he said that Turner had been and examined the records, and found that Henderson’s mortgage did not cover it. Kelso states that in the fall of 1836 Offield said that he and Turner were about purchasing the land of Willis, and inquired of witness whether Henderson had a mortgage on it, and witness told him that he had. If these witnesses all sweat to the truth, it certainly requires no great stretch of credulity to believe, that at the time of their-purchase, both Offield and Turner knew of the existence of this mortgage, and supposed and believed that it covered this land, and purchased it subject to that incumbrance. Especially when; we also take into consideration many strong corroborating circumstances, tending to the same conclusion; and if I am correct in this determination, it is liable to be charged in their hands, in the same manner that it would have been, had the legal title still remained in Willis. We will next inquire whether the legal title which Howell holds to a part of this land changes in any manner the equitable rights of the parties. It appears that after Turner discovered the mistake in the mortgage, he made a voluntary conveyance of an undivided half of the premises to Howell, for the benefit of the creditors of Turner and of Offield and Turner ; and because no notice is brought home to him of this incumbrance, it is insisted that he, at least, must be considered as a bona fide purchaser without nptice. It may be admitted that if he had purchased the land for a valuable consideration, and was not chargeable with notice, that his title should not be defeated, because he derived it through'a contaminated channel. But thisisnothis case. So far as he is concerned, his conveyance is entirely voluntary, and under.it he could acquire no rights to the prejudice of the equitable interests of the complainant. Nor, in fact, does he claim any personal rights under this conveyance; but all that he does claim is to hold the legal title for the use of the creditors of Offield and Turner. Nor have these creditors, in consequence of this conveyance to Howell, for their use, acquired any interest which can affect the rights of the complainant. Had they.purchased the land for a valuable consideration, and taken the deed in the name of Howell, withoutnotice of the complainant’s equity, their rights might have'been protected to the same extent they would have been if the deed had been taken in their own names. But such appears not to have been their case. They made no purchase of the land; nor were they strictly parties to the transaction ; nor does it appear that they knew anything of it. [* 20] We will next examine the objection that was taken, that these creditors should have been made parties to this proceeding. It is a general rule in chancery that all persons interested in the subject matter of the litigation, whether it be a legal or an equitable interest, should be made parties, so that the court may settle all of their rights at once, and thus prevent the necessity of a multiplicity of suits. To this rule there are necessarily many exceptions, and we find it modified in a great many instances. One general rule, however, governs all of these exceptions, and that is, “ that as the object of the rule is to accomplish the purposes of justice, between all of the parties, andas it is a rule founded in some sort upon public convenience and policy, rather than upon positive principles of municipal or general jurisprudence, courts of equity will nob suffer it to be applied so as to defeat the very purposes of justice, if they can dispose of the merits of the case before them without prejudice to the rights or interest of other persons who are not parties; or, if the circumstances of the case render the application of the rule impracticable, (Story.’sEq. Plead, 7,8,) and if the persons thus interested are unknown to the complainant, lie need not make them parties. (Story’s Eq. Plead. 92.) And another exception is where the persons collaterally interested are exceedingly numerous, and it would be impracticable to join them without great delays and other inconveniences. (Story’s Eq. Plead. 94.) In this case, who these creditors are, or how many there are of them, we are left entirely uninformed; and I am of opinion that, under the circumstances, it was unnecessary that they should be made parties. The answer of Turner also states that one Cusliing holds the legal title to an' undivided half of these premises, and it is objected that he should have been made a party to this suit. It is a sufficient answer to this objection to observe, that there is no evidence in the cause showing that Cushing has any interest in the land. It has been already remarked that the answer of Turner is not sworn to, the oath having been waived under the statute. An answer put in Avithout oath isnotforany purpose evidence in'the cause, but performs the office of pleading alone. It proves nothing which it alleges, and the only purpose which it serves is to assist in making up the issues. The complainant then should not be compelled to incur the delay and expense of making new parties to the suit, upon a mere statement in an answer not sworn to, that other persons are interested in the subject matter of the suit. In order to make him do this, it must appear satisfactorily, from something that is evidence in the cause, that there are other interests which are not before the court. When this is thus made to appear, the court will not render a decree affecting those interests, until they are brought before it in a proper manner. Upon the Avhole case, then, we are satisfied that the [* 21] decree of the court below ivas proper, and it is therefore affirmed with costs. Decree affirmed. Note. As to construction of statutes regulating interest, see Beaird v. Foreman, I Scam. 40 ; Madison Co. v. Bartlett, Ibid. 67 ; Tindall v. Meeker, Ibid. 137 ; Murry v. Crocker, Ibid. 212 ; Prevo v. Lathrop, Ibid. 305 ; Pearsons v. Hamilton, Ibid, 415 ; Lurton v. Gilliam et al., Ibid. 577 ; Hamilton v. Wright, Ibid. 582 ; McConnel v. Thomas, 2 Scam. 314 ; JRaplee v. Morgan, 2 Ibid. 562 ; Hancock et al. v. Hodgson, 3 Scam. 333 ; Conkling v. Underhill, 3 Ibid. 388. Lockwood, Justice, was not present on the argument of this cause, and gave no opinion.